UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SHIRLEY J. BRYANT, | No. ED CV 08-1026-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 5, 2008, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 2, 2008, and September 4, 2008. The parties filed a Joint Stipulation on March 11, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on March 24, 1948. [Administrative Record ("AR") at 100.] She has a year of college education and two years of vocational training [AR at 31], and past relevant work experience as a customer service representative. [AR at 135, 142, 156.]

On January 5, 2006, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since December 15, 2001, due to degenerative disc disease, high blood pressure, coronary heart disease, arthritis in the back and neck, degenerative joint disease, problems with cholesterol, status post open heart surgery, swelling of one leg, and spasms in the other leg.[1] [AR at 100-05, 134.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 67-71, 76-80, 82.] A hearing was held on October 24, 2007, at which plaintiff appeared with counsel and testified on her own behalf. Testimony was also received from a vocational expert and a medical expert. [AR at 25-52.] On November 21, 2007, the ALJ determined that plaintiff was not disabled. [AR at 4-15.] Plaintiff requested review of the hearing decision. [AR at 1.] The Appeals Council denied plaintiff's request for review. [AR at 1-3.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Plaintiff's previous applications for benefits were denied, and do not appear to be at issue in this action.

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

1 equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 9.] At step two, the ALJ concluded that plaintiff has the "severe" impairments of coronary artery disease; status post bypass surgery; cervical spine disorder; lumbar spine disorder; and carpal tunnel syndrome, right upper extremity.[3] [AR at 9.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 9.] The ALJ further found that plaintiff

/
/
/
/

---

[2] The ALJ also determined that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. [AR at 9.]

[3] The ALJ also concluded that plaintiff is hypertensive, but that this condition is non-severe. [AR at 9.]

4

retained the residual functional capacity ("RFC")[4] to perform a "narrow range" of sedentary exertion[5] with various limitations. [AR at 10.] At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work as a customer service representative and customer service clerk. [AR at 14.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 14-15.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider plaintiff's pain testimony; (2) properly consider the type, dosage, effectiveness and side effects of plaintiff's medications; and (3) pose a complete hypothetical question to the vocational expert. Joint Stipulation ("Joint Stip.") at 2-3. As set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

**A.   PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ failed to properly consider her testimony of debilitating pain. Specifically, plaintiff argues that the ALJ did nothing more than summarize her statements and did not provide legally sufficient reasons for rejecting her testimony. Joint Stip. at 3-9.

Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v.

---

[4]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[5]   Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

1 Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide
2 clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms
3 when there is medical evidence of an underlying impairment). The factors to be considered in
4 weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2)
5 inconsistencies either in the claimant's testimony or between the claimant's testimony and his
6 conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from
7 physicians and third parties concerning the nature, severity, and effect of the symptoms of which
8 the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also
9 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general
10 findings." Dodrill, 12 F.3d at 918. Absent evidence showing that the plaintiff is malingering, the
11 ALJ must state which testimony is not credible and identify the evidence that undermines the
12 claimant's complaints. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)
13 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and
14 what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If
15 properly supported, the ALJ's credibility determination is entitled to "great deference." See Green
16 v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

17 In the decision, the ALJ determined that plaintiff's statements concerning the intensity,
18 persistence and limiting effects of her symptoms were "not entirely credible." [AR at 11.] As
19 neither party points to any evidence in the record of malingering by plaintiff[6], the ALJ was required
20 to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d
21 at 1040. While plaintiff contends that the ALJ did not provide specific evidence that undermined
22 plaintiff's credibility, or identify those portions of her testimony that he found to be not credible, the
23 ALJ in fact discounted plaintiff's subjective complaints of pain based on "substantial reasons to
24 conclude that [plaintiff] is able to engage in a wide range of substantial gainful activity," including:
25 (1) plaintiff testified that she has not worked since the alleged onset date, but her earnings record

---

[6] In fact, Dr. Sami Nafoosi, a medical expert, testified at the hearing that there is no evidence of malingering in the file. [AR at 41.]

6

shows $4,400 in earnings after that date; (2) plaintiff has required only conservative treatment for her back and neck pain; and (3) plaintiff's daily activities. [AR at 12-14.] As discussed below, the Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that they are clear and convincing.

The ALJ fully discussed plaintiff's medical records, noting, among other things, her treatment for neck and low back pain; diagnosis of multi-level degenerative disc disease; x-rays and MRIs revealing mild degenerative disc disease, mild marginal spurring, stable mild spinal stenosis, moderate stenosis at the central canal and bilateral neural foramina, and posterior degenerative facet joint disease with secondary moderate to severe central canal stenosis; and nerve conduction studies showing no evidence of lumbar radiculopathy. [AR at 12, 229, 230, 232, 233, 234, 301.] The ALJ also discussed a consultative orthopedic examination conducted by Dr. Jeff Altman in March, 2006, which showed that plaintiff had full range of motion of her neck, normal range of motion of her shoulders, elbows, hands, knees, ankles, feet and hips, but limited range of motion of her back in flexion due to her recent heart surgery. Plaintiff had normal motor strength. Dr. Altman concluded that plaintiff could push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently, could walk and stand for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, and could perform frequent postural activities, gross and fine manipulation, and agility activities. [AR at 12-13, 248-52.] The ALJ ultimately assessed even greater limitations than those placed on plaintiff by Dr. Altman, in light of plaintiff's subjective complaints and heart surgery. [AR at 13.]

Following this accurate assessment of plaintiff's medical records, the ALJ then provided multiple reasons to reject her credibility. Plaintiff in her applications for benefits alleged an onset date of her inability to work of December 15, 2001. [AR at 100, 103.] She testified at the hearing that she has not worked since that date. [AR at 32.] The ALJ, in discounting plaintiff's credibility, concluded that her earnings record contradicts these assertions, as it shows that she earned $4,400 in the year 2002. [AR at 108, 119, 125.] This inconsistency is a legitimate factor that can be considered in weighing plaintiff's credibility. See Thomas, 278 F.3d at 958-59. The ALJ also relied on the "conservative and intermittent" treatment plaintiff received for her back and neck pain

to discount her credibility. An ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's testimony of disabling limitations or disabling pain. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that the claimant received only conservative treatment for back injury is a clear and convincing reason for disregarding testimony that the claimant is disabled). Here, despite plaintiff's testimony that her neck and back pain prevent her from sitting or standing for extended periods [AR at 44], her treatment for those conditions was indeed conservative. While she was prescribed exercise, physical therapy and medications for her condition, and diagnostic studies were performed [AR at 197, 203, 207, 229-34], she has not, however, had any epidurals or surgical intervention as a result of her back pain. [AR at 248.] Neither is there evidence of any extended hospitalizations for her back condition. Indeed, plaintiff testified that her medical treatment during the past couple of years has consisted of only "[m]edication and . . . home treatments and stuff." [AR at 34.] Neither does plaintiff in the Joint Stipulation point to any evidence of treatment she received, let alone treatment that could be deemed more than conservative. As such, the ALJ's rejection of plaintiff's treatment as conservative is entirely supported by the record and is proper. Finally, the ALJ cited plaintiff's assertions that on an average day she is able to walk, use an exercise bike, and prepare her own food. She also claims that she can stand for one hour at a time, for a total of five hours in an eight hour day, and can sit for 30 minutes at a time, for a total of three hours in an eight hour day. [AR at 42-44.] A plaintiff's daily activities can be a valid basis to reject credibility. See Thomas, 278 F.3d at 958-59; see also Fair, 885 F.2d at 603-04 (ALJ may properly rely on daily activities inconsistent with claim of disabling pain); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermine subjective testimony of disabling pain).

"While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot affirm such a determination unless it is supported by specific findings and reasoning." Robbins v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006). Here, the ALJ provided clear and convincing reasons for discounting plaintiff's subjective testimony. His conclusion is entitled to deference. See Morgan v. Commissioner of the Social Security Administration, 169

F.3d 595, 599 (9th Cir. 1999) ("questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary"); see also Fair, 885 F.2d at 604 (where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," reviewing courts must not engage in second guessing); see, e.g., Fuller v. Astrue, 2008 WL 906447, *6 (D. Ariz. Mar. 31, 2008) (ALJ's credibility determination is entitled to deference if her reasoning is supported by substantial evidence in the record and is "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony.'") (citing Bunnell, 947 F.2d at 345).

To the extent plaintiff contends that the ALJ did not specifically identify which testimony he found not credible, the Court disagrees. In forming an RFC that allows for more activity than that testified to by plaintiff (for example, the ALJ concluded that plaintiff can sit for six hours in an eight hour day, whereas plaintiff testified she was limited to three hours of sitting), the ALJ rejected her testimony in that regard, and to the extent that she was contending that she is unable to perform any work activities. As the ALJ provided specific reasons for doing so, remand is not warranted.

**B.   SIDE EFFECTS OF MEDICATION/FAILURE TO POSE COMPLETE HYPOTHETICAL**

Plaintiff contends that even though she takes Vasotec, which causes her drowsiness, the ALJ did not consider the side effects from this medication. Joint Stip., at 9-11. Plaintiff cites two disability reports and a drug guide in support of this claim. [Joint Stip., at 9; AR at 161, 177.] Plaintiff further contends that the hypothetical question posed to the vocational expert was incomplete as it did not include the side effect of drowsiness caused by her medication. Joint Stip., at 11-14.

Although the side effects of any medication taken by a claimant to alleviate her pain or other symptoms is a factor relevant to an ALJ's disability determination (see 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); see also SSR 96-7p), the claimant bears the burden of proving that the claimed side effects of her medications are severe enough to impair her ability to work. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (the claimant bears the burden of

producing clinical evidence showing that the use of narcotic medication impaired her ability to work). Side effects of medications not severe enough to interfere with a claimant's ability to work are properly excluded from consideration. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("[t]here were passing mentions of the side effects of [the claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work.").

The passing references to side effects from plaintiff's medications are inadequate to establish a disabling condition because there is nothing in the record to show that plaintiff's purported side effects resulted in functional limitations that were severe enough to interfere with her ability to work.[7] Rather, the only evidence regarding plaintiff's alleged side effect of drowsiness is her own statements to the Social Security Administration in the disability reports. See Thomas, 278 F.3d at 960 (ALJ properly excluded claimant's assertion that pain medication caused dizziness and difficulties in concentration because "[t]he only evidence regarding [side effects were the claimant's] own statements to her doctor and her testimony at the hearing"); see, e.g., Moore v. Astrue, 2009 WL 497503, *7 (C.D. Cal. Feb. 26, 2009) ("[r]eferences to side effects made only to the social security administration are not alone evidence that the side effects of the medications are severe enough to affect [the claimant's] ability to work."). Notably, plaintiff has pointed to nothing in the records indicating that she told her physicians of any side effects she was experiencing from her medications. Thus, plaintiff did not meet her burden of demonstrating that her use of medications impaired her ability to work. See Miller, 770 F.2d at 849. Remand is not warranted on this issue.

---

[7] As support for her claim regarding the ALJ's failure to consider the side effects of the medication Vasotec, plaintiff refers to a medical guide that identifies the possible side effects from this medication, which include dizziness. Joint Stip. at 9. However, a listing of the common side effects from this particular medication is inadequate to establish that plaintiff experiences any side effects with sufficient severity to interfere with her ability to work. See, e.g., Olley v. Astrue, 2008 WL 4554883, *6 (C.D. Cal. Oct. 9, 2008) ("[t]he mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any one of the myriad possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working for *these* reasons.") (emphasis in original).

Similarly, the ALJ did not pose an incomplete hypothetical to the vocational expert when that hypothetical did not assume an individual who was hampered by drowsiness. [AR at 48-50.] A hypothetical must only include those limitations for which there is substantial evidence. See Osenbrock, 240 F.3d at 1163-64 (the ALJ is required to pose hypothetical questions based upon medical assumptions supported by substantial evidence in the record that reflect the claimant's limitations) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996)).  Remand is thus not warranted on this issue either.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: July 29, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE